856 F.2d 197
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger Dean VIGUS, Defendant-Appellant.
 No. 87-3861.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1988.
 
 Before KENNEDY and WELLFORD, Circuit Judges and HERMAN J. WEBER, District Judge.[1]
 PER CURIAM.
 
 
 1
 Defendant, Roger Vigus, appeals his conviction in the United States District Court for the Northern District of Ohio, of misappropriating postal funds in violation of 18 U.S.C. Sec. 1711. Vigus alleges that his conviction should be overturned because the evidence was insufficient to convict him, and because a demonstrative prosecution exhibit was improperly admitted as evidence. Because we consider these claims to be without merit, we AFFIRM.
 
 
 2
 A verdict will be set aside for insufficiency of the evidence only if viewing the evidence in the light most favorable to the government, it can be said that no reasonable juror could accept the evidence as sufficient to support a conclusion that defendant was guilty beyond a reasonable doubt. In this case, while the evidence is largely circumstantial, we believe that it was sufficient to support the jury's verdict.
 
 
 3
 The government introduced evidence showing that over $14,000 worth of stamps under defendant's control were unaccounted for. It then demonstrated how defendant's actions leading up to the audit which discovered the missing stamps led to the inference that he had sold the stamps and then pocketed the money from the sales. Various pieces of evidence supported the government's theory. First, the government introduced evidence that showed an unaccountable rise in defendant's accountability in the months preceding the audit that disclosed the missing funds. The government introduced expert testimony that rising accountability often indicates embezzlement, and showed that there was no legitimate reason for defendant to repeatedly request such an inordinant amount of stamps unless he was selling more stamps than he was recording. This was especially suspicious because his accountability was rising at a time when the number of hours he was working was being reduced. Also, in spite of this rising accountability, Vigus frequently ran out of certain types of stamps. For example, he ordered over 17,000 22 cent stamps at a time when his records indicated that he should have had approximately 59,000 on hand.
 
 
 4
 The government also introduced evidence that defendant had doctored his records in time for his prior, scheduled audits. For example, on March 11, his scheduled audit showed that he had more $1.00 stamps on hand than the total of all he had ever requested. Defendant tried to explain this discrepancy away by claiming that he had bought the stocks of other clerks who were checking out. However, all of the clerks who had checked out denied having sold any of their other stock to him. The government contends that the existence of the additional stock indicates that he had borrowed stamps from unknown other clerks at the time of his audit in order to cover up any discrepancy that already existed. With all of this evidence, and no other plausible explanation of the discrepancy, we cannot say that the evidence was in anyway insufficient.
 
 
 5
 Defendant also objects to the introduction in evidence of stamp stock representing the amount of defendant's claimed inventory and his requested new supply. Defendant claims that the introduction of this evidence was highly prejudicial and was not relevant. We disagree. The government introduced this evidence to demonstrate exactly how many 22 cent stamps defendant should have had when he ordered many more. The government was properly trying to show the unreasonableness of this order. This was relevant to the government's attempt to prove that the only reason that he made such orders was to cover up for the stamps that he had sold, but failed to record. It was certainly within the District Court's broad discretion to admit such evidence.
 
 
 6
 AFFIRMED.
 
 
 
 [1]
 The Honorable Herman J. Weber, U.S. District Court for the Southern District of Ohio, sitting by designation